[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Patrick F. Cox and Defendant Maureen Cox intermarried at Waterbury, Connecticut on August 17, 1963. They have resided in this State continuously since. The Plaintiff was born on July 8, 1937 and the Defendant on October 24, 1939. There are three children of the marriage, all adults: Sheila, born March 31, 1966; CT Page 383 Noele, born December 21, 1967; and Robyn, born September 25, 1970. Sheila, Robyn and Robyn's 5-year old child reside with the Defendant at the marital residence, 89 Hungerford Avenue, Oakville, Connecticut.
The parties concede that the marriage has irretrievably broken down, and that no fault can be assigned to either party. The parties are residing separate and apart. Plaintiff moved out of the marital residence in December 1992, and resides in a rented apartment.
The Plaintiff is Advertising Manager of the Waterbury Republican-American, where he has been continuously employed since 1960. His gross salary is $63,300 per year, payable in monthly installments of $5,275 on the 15th day of each month. In 1993 he assumed the additional position of Interim Marketing Director, for which he was given a bonus of $12,000 per year payable in $6,000 installments in January and July. He no longer holds this position, as a full-time Marketing Director was named this past summer. The final $6,000 installment was paid to him in this past July. Plaintiff also earned approximately $1,100 per year the past several years for part-time work proofing publications for Zackin Publications, Inc., work he will no longer do because of eye problems.
The Defendant was a bookkeeper at the newspaper when the parties met in 1961. She left that employment when the eldest child was born. Later, she was employed part-time by a dance studio. She resumed full-time employment at various times in the 1980's, performing bookkeeping and related work for an accounting agency and several banks in the Waterbury area. She has not been employed for the past several years. She does, however, possess employable skills as a bookkeeper.
The Defendant had surgery on her right hand this past July for carpal tunnel syndrome. She has a similar problem on her left hand. She has been experiencing swelling and pain in her right hand since the surgery, and is presently taking medication for it. Radiological and laboratory tests have indicated no physical reasons for her discomfort. Other tests have indicated that she CT Page 384 does not have inflammatory arthritis or a rheumatic or thyroid condition.
The primary marital assets available for division consist of the marital residence and two benefit plans available to Plaintiff by reason of his employment. The marital home, purchased in 1965, is a six room house on a double lot, each 60 feet by 150 feet. The house is on one lot and the garage on the other. Although no documentary evidence was submitted, the parties assert that they hold joint title with the right of survivorship. The home is valued by Plaintiff at $125,000 and by Defendant at $115,000, and is subject to a mortgage in the approximate amount of $47,000. Adopting a value of $120,000 gives a present equity of approximately $73,000.
Plaintiff's employment benefit plans consist of a Defined Benefit Pension Plan and a Capital Accumulation Plan, the latter also known as the 401k plan. As of January 1, 1995, the Pension Plan had a lump sum value of $103,729.63 and a value accumulated during the marriage of $96,936.24. Payments commence at age 65 retirement. Assuming present values and election of the normal 10 year guaranteed payment option, the plan would then pay $2,024 per month if Plaintiff remained in employment until retirement. These amounts are subject to increase if Plaintiff's salary increases. If Plaintiff left employment now, the payment at retirement would be $1,629.21 per month. Included as part of the Pension Plan is a life insurance policy with a present death benefit of $114,000.
The Capital Accumulation Plan had a value of $22,722 as of September 30, 1994. Value will fluctuate in accordance with the value of investments. Withdrawals from the Plan are taxable and may be made without penalty after age 59 1/2, and with a 10% penalty prior thereto. Plaintiff also has through his employment a group life insurance policy with a present death benefit of $55,000, reducing to $2,500 upon retirement.
A fair and equitable distribution of these assets will be accomplished by assigning to the Defendant full and sole title to the marital residence, transferring to CT Page 385 her full ownership of the Capital Accumulation Plan, and requiring that she be maintained as primary beneficiary of the group life insurance policy. Plaintiff will retain sole right to the Defined Benefit Pension Plan.
The parties are in agreement as to the balance of the personal property. Plaintiff has removed all of his personal possessions, including his civil war and music collection, and shall retain the same. The furnishings and other personal property in the marital home shall be retained by Defendant. Title to the 1991 Plymouth Colt presently used by Defendant shall be retained by her.
By Order dated August 30, 1993, entered upon stipulation of the parties, Defendant was awarded temporary alimony of $500 per week. At that time Plaintiff's annualized earnings from the newspaper amounted to $73,440, being $61,440 base salary plus the $12,000 bonus. His annual base salary has increased to $63,300, but he no longer receives the bonus. The economic well-being of both parties is dependent in large part on Plaintiff's continued good health and employment. Under these circumstances, and upon review of the needs of the parties as set forth in their respective financial affidavits and testimony, alimony at the rate of $400 per week is in order.
The closing arguments of counsel would indicate that the parties are in agreement with the foregoing provisions. The two remaining open areas concern the 1994 tax return and responsibility for COBRA payments. The Court is cognizant of the portion of the August 30, 1993 stipulation relevant to taxes. The parties nevertheless filed jointly for 1993. The Court is further cognizant of the differing impact upon the parties of separate or joint return for 1994. Under the circumstances, it is fair and equitable that the parties file a joint return for 1994, the last year for which they may do so, any refund to belong to Plaintiff.
COBRA payments will be $281.93 per month. Defendant has demonstrated that she possesses employable skills. She needs time to recover from what has been an emotionally difficult period, as well as to give her hand a chance fully to heal. Accordingly, COBRA payments shall CT Page 386 be made by Plaintiff for the period through March 1996, or such longer period as may be covered by his payment by salary deduction of March 15, 1996. Thereafter, Defendant shall be responsible for such payments. To the extent that during such period Defendant has medical coverage by reason of her employment, COBRA then ceasing, Plaintiff shall reimburse her for her co-pay, if any, during the period in which he would otherwise have been responsible for COBRA payments, not to exceed the amount thereof.
In making these findings and orders, the Court has carefully considered the pertinent statutory criteria and requirements, including those within the purview of General Statutes §§ 46b-81 and 46b-82. The Court has carefully reviewed the evidence in conjunction with the same, and has evaluated the credibility of the parties. The Court is also cognizant of the Order of this Court entered January 3, 1995.
The Court makes the following findings and orders:
1. The Court has jurisdiction.
2. The marriage has broken down irretrievably. No fault is assigned to either party.
3. The marriage is dissolved.
4. With respect to the real property known as 89 Hungerford Avenue, Oakville, Connecticut, comprising the marital residence:
 a. The joint tenancy is hereby severed in accordance with General Statutes § 47-14g.
 b. Plaintiff shall forthwith by appropriate Quitclaim Deed transfer his entire interest therein to Defendant. Costs of recording the deed and any conveyance taxes shall be paid by Plaintiff.
 c. Defendant shall be responsible for and shall pay when due all expenses for mortgages, liens, taxes, assessments and charges, insurance, upkeep and maintenance, and shall indemnify and hold harmless the Plaintiff from any claim, cost, CT Page 387 expense or liability respecting the same.
5. Plaintiff shall forthwith transfer to Defendant his entire interest in and to the said Capital Accumulation Plan, also known as the 401k plan, so that the funds therein and all rights and benefits thereof shall be hers absolutely.
6. Plaintiff shall name the Defendant as the irrevocable primary beneficiary of the group life insurance policy provided by his employer, presently having a death benefit of $55,000, and, during the course of his employment by said employer, maintain said policy in full force and effect.
7. Plaintiff shall retain all rights and benefits of and to the said Defined Benefit Pension Plan, including to the said life insurance policy that is a part thereof, free and clear of any claim of the Defendant. Distributions under the Plan to him on retirement may be considered by the Court with respect to modification of periodic alimony.
8. The Defendant shall retain sole title to the 1991 Plymouth Colt automobile presently used by her, and shall pay all loans, taxes and other costs associated with said vehicle.
9. The Defendant shall have sole title to and possession of all furnishings and other personal property presently located at the marital residence. Plaintiff shall have sole title to and possession of all personal property, including his civil war and music collections, now in his possession.
10. The parties shall file, prior to April 15, 1995, joint Federal and State income tax returns for 1994, any refund therein to belong to Plaintiff. The returns are to be prepared by an accountant acceptable to both parties, the accountant's fee therefor to be split equally between the parties.
11. Defendant is awarded periodic alimony in the amount of $400 per week. This award shall terminate upon Plaintiff's death, or upon Defendant's death, remarriage CT Page 388 or cohabitation with any person. Periodic alimony shall be due and payable on the same day of the week as that under the foregoing temporary alimony order.
12. Plaintiff shall pay for the medical insurance coverage available to Defendant through his present employer under the provisions of COBRA, for the period through March 1996, or such longer period as may be covered by his payment by salary deduction of March 15, 1996. Thereafter, Defendant shall be responsible for such payments. To the extent that during such period Defendant has medical coverage by reason of her employment COBRA then ceasing, Plaintiff shall reimburse Defendant for her co-pay, if any, during the period in which he would otherwise have been responsible for such COBRA payments, not to exceed the amount thereof.
13. Except as herein provided, each party shall hold the assets shown on said party's most recent financial affidavit free and clear of any claim of the other, and shall be responsible for such party's own liabilities shown thereon.
14. The reasonable witness fees, if any, for testimony at this trial of the witnesses McArdle, Rice and Mansur, shall be evenly split between the parties.
15. In light of the foregoing awards and orders, each party shall be responsible for such party's own attorney's fees. Except as herein provided, no costs are awarded to either party.
16. The parties shall promptly execute and deliver any and all documents necessary or desirable to effectuate the foregoing Orders.
17. The Court shall maintain jurisdiction for the purpose of issuing such orders necessary or desirable to effectuate the foregoing transfers including a Qualified Domestic Relations Order (QDRO).
Judgment shall enter in accordance herewith.
DAVID L. FINEBERG, J. Superior Court Judge CT Page 389